The next matter, number 24-1188, Asociacion de Detallistas de Gasolina de PR Inc. v. Commonwealth of Puerto Rico et al. At this time, would counsel for the appellants please introduce themselves on the record to begin. Good morning, honorable judges. Good morning, honorable judges. My name is Andres Rivera. I'm the attorney for the plaintiff appellants in this case. Which are approximately 20 gasoline service stations and the Association of Puerto Rico which encompasses the gasoline detailers in Puerto Rico. In this case, your honor, we are asking this court to read the third law, which I've tuned in for as well. We are asking the court to reverse the court's decision dismissing the complaint filed by the plaintiff's appellants. In which the court ruled that conflict credential doctrine does not apply and that the plaintiff had not raised appropriately the vagueness argument under the 14th Amendment. Counsel, let me ask you, the one who's regulating the matter here is the Commonwealth. The law refers to the credit card company. The relationship between the credit card and the customers. Here's the Commonwealth regulating. How is the Commonwealth, I guess, or any other state envisioned in that provision, the federal provision. I think it would be that last part of the question, yes. How can you read that the Commonwealth, or any other state in which the Commonwealth is normally regarded as a state, is bound by that provision in the federal law, which applies to credit cards? Well, your honor, it is a conflict credential argument. The Puerto Rico law is an obstacle to the accomplishment of the federal law, which encourages the use of cash. But again, I'm going to say that applies to credit cards, and it was enacted so credit cards would not have these Congress deemed predatory practices. The Commonwealth is not a credit card company. It's not engaged in predatory practices. But the purpose of the federal law is to allow merchants to give customers discounts if the customers opt to pay in cash. Where is that clearly set, that the purpose is to do that even in the face of a local law, as opposed to to protect them from the credit card companies precluding them from doing that? Well, the Cash Discount Act specifically states that its purpose is to encourage the use of cash. Yeah, but that's a different thing. Obviously, you can encourage it through many different ways, one of which is by prohibiting the credit card companies from stifling. The question is, is it the purpose to do it even if the stifling is not coming from the credit card companies but is coming from a local law? What indicates that that's part of the purpose? Your honor, Congress' purpose is to encourage the use of cash by prohibiting credit card companies from… But the credit card companies are still prohibited from engaging in these practices. Correct, but it would be an illogical course of action. I mean, it would undermine the purpose by allowing the state to do what companies aren't allowed to do. Why? There's different actors in the world. You might be concerned by the economic power that the credit card companies exert, and you want to restrain that. You might think that's different than if the local community through democratic means chooses to protect something. Why isn't that – those are just different ideas of the type of protection that one needs. The statute on its face clearly says credit card companies cannot be the ones who do this. It doesn't say anything about anybody else. Correct, Your Honor, but we only need a credit card company or a card service containment company to have a lawmaker enact a law so that the state prohibits what the companies aren't allowed to prohibit. So they're using – the state is doing, you could say, the dirty work. And if Congress thinks that that also should be preempted, then Congress could pass a statute to preempt that. Precisely, and I add to that point. Congress tomorrow could say no state nor commonwealth nor territory of the United States can engage in some such practice and then preempt it also, but it hasn't. It hasn't, Your Honor, but it would be good to consider that Puerto Rico is the only jurisdiction, as far as my research, that has a law that prohibits the discount by the merchants to the customers. So if the people that have traditionally prohibited this practice is not states or commonwealth, it has been credit card companies and card processing companies. So that's the reason why Congress prohibited them to do this, to prohibit the cash discount. No state has ever done that. If Puerto Rico is the only state or territory that has a law that theoretically prohibits the cash discount because it does not prohibit expressly as an argument. In the Supreme Court, you're making an obstacle preemption argument, right? You're not saying it's impossible to comply with those direct – Conflict, yes. And the form of conflict preemption that you're identifying is obstacle preemption, right? Okay. Yeah. Given the Supreme Court's recent case law, which tells us to be careful in finding an obstacle preemption because it's not text-based, what would you say is the best precedent you have to find conflict preemption that supports us concluding, despite what the text of the statute says, we should nonetheless find that there's conflict preemption? Well, Your Honor, the law – the federal law that we're dealing with, which is the Food and Lending Act, as amended, has an entity preemption clause. But that clause – and it's in the brief – works when the – for customer protection laws, state customer protection laws that are – that help the customers more than the federal. So in this case, there's no way the state can say that their customer protection law prohibiting a cash discount, which is allowed by federal law, not mandated but allowed by two federal laws, cannot – is an obstacle to it. Where the text of the law seems narrower, but nonetheless they conclude there's conflict preemption based on some purpose-type argument that you're suggesting. Is there one that – Well, I believe the cases were cited in my brief, Your Honor. No, that's fine. I'll find you the preemption. I was just wondering if there's one that stood out to you as analogous to this case. No, the main argument, Your Honor, is that if the Congress is prohibiting car companies to prohibit merchants to give cash discounts because they're the only ones that are interested in doing so, and states have never done so, but there's no state that has a law such as that one. Puerto Rico enacts such a law that is essentially – you just need a lawmaker, a law to be passed. Banks, credit card companies, all the time promoting their interest in the – and there's nothing wrong with that, but the purpose of the law is to encourage cash discounts, to allow merchants to have a relief with these slight fees that are eating up their profits, and also to help the poor people that doesn't have credit cards to be able to pay in cash and have that option and not subsidize the people that do have credit cards and do pay with credit cards. And this is all – that's all the Congress contends, and the Puerto Rico law is an obstacle to that. And in addition, there is the Bakeness argument in which it was alleged and complained that the Puerto Rico law does not expressly prohibit the cash discount. It just eliminated the provision that allowed it in the previous version of the law. It just eliminated that provision but did not expressly prohibit it. It is doubtful that the Department of Consumer Affairs then issues a regulation prohibiting the cash discount. And the question whether this was raised. Your Honor, we believe it was raised, although it was not elaborated in the complaint. The complaint just requires a short statement of the allegation. This was expressly stated that the Puerto Rico law does not prohibit the cash discount. It just eliminated the clause which makes ambiguous the language of the law. We did elaborate on the opposition to the motion to dismiss as soon as the Puerto Rico government tried to dismiss that claim. But, Your Honor, if we read the allegations of the complaint, we make reference to the first federal case, which was under Judge Dominguez, which he specifically stated that there was a bakeness in this law and told plaintiffs to go to the state court to raise these arguments first as a form of abstention. And then when we go back to court, we do raise that bakeness claim in the complaint, Your Honor, although it is not as elaborated as the preemption argument. But we do understand that it was raised and that the dismissal under Rule 12, Page 6 is contrary to law because there's some sort of leeway when the complaint has to be interpreted to the best of the plaintiff and that there's no possible relief in the complaint. Sorry, can I just interrupt because I think I'm misunderstanding you. Where in your complaint do you make the bakeness argument? Can you point to a place in the complaint? Yes, Your Honor. He says docket number 2445, citing docket number 1 of paragraph 41. It's what the district court identifies as a single sentence that you argue alleges the unconstitutional bakeness claim. And is that the only sentence that you allege? Yes, Your Honor. We understand that with that single sentence we stated that the Puerto Rico law does not expressly prohibit the cash discount. I understand, but it's that sentence alone that you face that argument on. Okay, thank you. Thank you. Thank you. Thank you, Counsel. At this time, Counsel for the Appellees, please introduce himself on the record to begin. Good morning, Your Honor. I'm Dino DePriest of this court down on behalf of the Court of Appeal. May I please have the floor? In the PRC Asylum and Heritage Association, as in this case, I'm not meant to be a burden. The presumption against me in front of the community applies in this case. And they have not meant the burden to establish confidentiality. How specific does preemption – again, there could be some implied preemption instances. How specific would preemption have to be in this instance? Sorry, Your Honor. For purposes of the Puerto Rico law, how specific would preemption have to be to begin with? Can you imply it or it has to be specific? For the Puerto Rico law? Yeah, for it to be preempted by federal law. No, it could be implied. So, like in this case, the appellate's already come to preemption. Also, preemption, it has not to be expressed. In this case, the general purpose statement, for example, that is in the CDA, it's not law. It's just a general purpose statement. And the Supreme Court has said clearly that a general purpose statement is not enough to put confidentiality into the law. It is also important to emphasize that if we see the text here, there's no indication that Congress had a clear manifest purpose to preempt state consumer laws. Is there any meaningful legal difference between the Cash Discount Act and the German amendment for preemption purposes? Well, Your Honor, there's a difference. The Fair Credit Billing Act, that's the one that first introduced the cash discount provision. That provision is – it's pointed out – it's pointed to card issuers, and the other one is – it regards payment card networks. So that would be the difference. But it doesn't talk about states. It doesn't talk about consumers or merchants in the relationship between consumers and merchants. So if one states that card issuers are banned from providing by contract any type of discount, and the other one talks about payment card issuers. If we thought the presumption against preemption does not apply, is the outcome the same from your point of view? Yes, Your Honor. I think the presumption applies strongly because it's a matter of states. And when you say that, what is the matter? Does the state regularly regulate credit card companies? No, this is a state consumer protection law. The state law of the Commonwealth is a consumer protection law. How does it protect consumers? Well, Your Honor, the Puerto Rico Legislative Assembly said – and this was discussed by the Puerto Rico Court of Appeals and its part of the appendix. The VR Legislative Assembly said that there was a problem with carbon markets and transparency that the Legislative Assembly wanted to correct. And it's important to say, Your Honor, that appellants in this case are not questioned in that district court ruling. The district court said this is clearly in the anti-preemption clause of the Durbin Amendment, and that's not being questioned before this court. So that argument – our position is that the argument is displayed by the appellants. I didn't quite follow that. So the district court ruling is – one of the rulings is that the Puerto Rico law is a consumer protection law, and that the district court judge said explicitly in its opinion. And appellants in this case have not questioned that part of the decision. They're not arguing in their brief that this is not a state consumer protection law, so they will be at some point preempted by the anti-preemption clause. That argument is simply not being made in the brief. And just so I understand, how is the consumer protection law – what is it – how is it protecting consumers? Well, Your Honor, I have to go back to what the Puerto Rico policy and the legislative assembly said. Obviously, that's a policy issue that the local legislative assembly concluded. And the statement of purpose says that clearly that it's because of transparency in parallel markets. And also there is a lack of a Department of Consumer Affairs order eliminating that provision of the order that actually at the beginning of the law, 150-2008, allowed protestors. And can you just help me? I'm just not understanding. How would it – what's the parallel market that they're talking about, and what's the – how does this increase transparency? Well, Your Honor, there's a – there's a kind of a statement from the Department of Consumer Affairs that is not in the appendix, but it's submitted in a 20-page letter. Well, the Department of Consumer Affairs cannot interpret state law. No, Your Honor, it can interpret state law, but – But it would not be binding on a court. No, it wouldn't. It wouldn't be binding on this court or even the Puerto Rico court. But just what is – I'm just trying to understand what is the consumer protection rationale. So parallel markets, and then it would increase transparency. Yeah, so that's what the statement of purpose of the amendment says. It's quite – it's not a long statement of purpose, so that's what it said. However, there's statutory history from the global – And, for example, DACA said that there was a problem of price posting and that consumers were getting confused because merchants were just posting the cash price, and credit card customers were thinking they were paying that price. That's not in the appendix, but it's of course outside. I think it's submitted in a 20-page letter, and that's part of the statutory history of the amendment. Thank you. Thank you, counsel. At this time, counsel for the appellant, please reintroduce yourself on the record. You have a two-minute rebuttal. Thank you. My name is Andres Correa, counsel for plaintiff's appellant. Your Honor, the district court mentioned in its rule, in its decision, that the case was being dismissed because plaintiffs did not prove that they had an absolute right to give cash discounts. We've never argued that we have an absolute right. Indeed, the federal regulations provide for the rule in order to do so. And it worked the same rule that DACA had, the Consumer Affairs Department of Puerto Rico, had in place when this was allowed. This was allowed in Puerto Rico for a few years. In addition, this does not only apply to gasoline stations. This applies to all retail businesses, all industries, barber shops, supermarkets, et cetera. We're not arguing about an absolute right. The right is regulated, and they have to comply with some rules and regulations regarding the postings, et cetera. And DACA has the capacity to penalize merchants that do not comply with those regulations. So that confusion and dual-pricing scheme that the Puerto Rico government is talking about is really to dual-pricing that the cash discount requires. Can I just understand, too? The district court at one point says, after quoting Boulding, a state law is not inconsistent with this subchapter if the protection such law affords any consumers greater than the protection afforded by the subchapter. And then he says – the district court then says, thus, it is within the EFTA's anti-protection clauses each. And I take it you're saying that's not true. There is no – why isn't it? Yeah, because it's not – it's not giving more protection from this thing. If we agree with you on that, the district court then goes on to say the fact that Law 150 is a consumer protection law also means that the presumption against preemption applies with particular force. That's, I take it, an independent argument about preemption analysis, which is that consumer laws are traditional areas of state regulation. Therefore, they come with a presumption against preemption. The government just said you don't make any argument against that aspect of the district court's protection. Is that true? That's not true, Your Honor. What is the reason for concluding that Law 150 is a consumer protection law also means that the presumption against preemption applies? When you read those two sentences together from the district court, the sole ground it gave for it being a consumer protection law is that it falls within the aegis of that last clause of the anti-preemption provision. I believe the reason why the district court says that is that the law is one law that is administered by the Department of Consumer Affairs in Puerto Rico because this law provides no greater consumer protection than the previous law, which provided for a cash discount to consumers. So there's no way a law that prohibits a discount to consumers provides greater protection to the consumers. Well, it may not provide greater. What I'm saying is that even if it doesn't fall within the terms of that last provision of 1693, I take the government to be saying, nonetheless, it's a consumer protection law because it was protecting consumers from price trickery and etc. So maybe it's not protecting them in the same way that this 1693 was contemplating, but it's nonetheless a consumer protection law, and as such is entitled to the presumption against preemption. What's your answer to that? The law has to be analyzed to see if it is really a consumer protection law. Do you say anywhere in your brief that that's not so, that it is not a consumer protection law insofar as it's promoting transparency in price and protecting against parallel markets? I believe I did make the argument of the consumer protection law, saying that there's no way this law can protect the consumer by prohibiting a discount when the other law provides for a discount and for a regulatory process to post, as it is in all other 50 states, where there's no jurisdiction that prohibits discounts. The other jurisdictions are fighting to allow the surcharge, to permit the surcharge. Those are the cases that they're dealing with in the other jurisdictions. Here, we're still dealing, we're trying to have the discount, which everybody else is following. Thank you. Let me just add one very quick thing. I know Golden Council mentioned it, you mentioned you referred to DACO. That's the Acronym and Signature Department of Consumer Affairs. So, anybody listening to the record, this is what you're referring to. We identify DACO because we have the BOCA, Department of Consumer Affairs. Okay, but you were saying DACO, that's why. Thank you, Your Honor. Thank you. Thank you, Counsel. That concludes argument in this case.